# UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | | |
|---|---|---|
| EDGAR VICENTE BERMEO SICHA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:25-cv-00418-SDN |
| | ) | |
| JUAN D BERNAL, | ) | |
| *In his Official Capacity as* | ) | |
| *Chief Patrol Agent, Houlton Sector,* | ) | |
| *U.S. Customs and Border Protection*, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

Petitioner Edgar Vicente Bermeo Sicha is an Ecuadorian citizen who entered the United States in March 2024. Upon entry, he surrendered to the Department of Homeland Security ("DHS"). DHS released Mr. Bermeo Sicha on his own recognizance under 8 U.S.C. § 1226(a)(2) and ordered him to appear in immigration court the following year. For the next sixteen months, Mr. Bermeo Sicha worked as a carpenter in Massachusetts. Then, on July 28, 2025, Border Patrol agents stopped and arrested him while he was on his way to a job site in Maine with two coworkers. He claims no one told him why he was being arrested. Respondents now submit a "Notice of Custody Determination," ECF No. 6-2, dated the day after Border Patrol arrested Mr. Bermeo Sicha, as an apparent new custody determination ordering Mr. Bermeo Sicha detained.

Although mired in complicated statutory and constitutional issues, ultimately this case presents a straightforward question: Whether due process required the government to give Mr. Bermeo Sicha notice and an opportunity to be heard before it revoked his original release determination and detained him. For the following reasons, I conclude

the Fifth Amendment required as much in Mr. Bermeo Sicha's case. Accordingly, I GRANT Mr. Bermeo Sicha's petition for a writ of habeas corpus.

## BACKGROUND[1]

Mr. Bermeo Sicha is from Ecuador. He and his family are of indigenous descent, and he has participated in the Pachakutik Movement—a political party geared toward indigenous interests in Ecuador. As a result of Mr. Bermeo Sicha's involvement in this political party, gangs threatened him and his family; his father was shot in the leg.

In March 2024, Mr. Bermeo Sicha sought refuge by entering the United States through the southern border. On arrival, he surrendered to the government and told Border Patrol agents that he feared persecution. On March 21, 2024, DHS released him on his own recognizance and issued him a notice to appear ("NTA") in immigration court on August 27, 2025. Mr. Bermeo Sicha's order of release imposed various requirements. Among other things, he had to report for any immigration hearings scheduled, report in person to a case officer, and not change his place of residence without permission from the case officer. Mr. Bermeo Sicha had initially told DHS that he planned to reside in New Jersey on release, so around the time of his release U.S. Immigration and Customs Enforcement ("ICE") began removal proceedings by filing the NTA with the Newark Immigration Court in New Jersey. After his release, however, Mr. Bermeo Sicha lived and worked as a carpenter in Lowell, Massachusetts.

Then, on July 28, 2025, Mr. Bermeo Sicha and another Ecuadorian coworker were riding as passengers in a vehicle driven by a third coworker when Border Patrol agents

---

[1] I draw these facts from Mr. Bermeo Sicha's verified petition, the parties' filings, and the evidentiary hearing held on August 28, 2025. *See Rodrigues De Oliveira v. Joyce*, No. 2:25-CV-00291, 2025 WL 1826118, at *1 n.1 (D. Me. July 2, 2025) (drawing facts from those sources).

stopped the vehicle and asked the driver for his papers. The driver said he had none, at which point Border Patrol arrested the driver and Mr. Bermeo Sicha.

Mr. Bermeo Sicha initially was detained at Somerset County Jail in Madison, Maine, but soon after was transferred to U.S. Customs and Border Protection ("CBP") custody at Van Buren Station, in Aroostook County, Maine.[2] On July 29, 2025, the day after Border Patrol arrested Mr. Bermeo Sicha, a "Patrol Agent in Charge" signed a warrant alleging simply that Mr. Bermeo Sicha "is within the country in violation of the immigration laws and is therefore liable to being taken into custody as authorized by section 236 of the Immigration and Nationality Act." ECF No. 6-1. The warrant does not allege any facts supporting that conclusion.

On the same day, a "Patrol Agent in Charge" signed the above-referenced Notice of Custody Determination stating that Mr. Bermeo Sicha would be detained "pending a final administrative determination" under section 236 of the Immigration and Nationality Act and part 236 of title 8 of the Code of Federal Regulations.[3] ECF No. 6-2. This new custody determination essentially revoked Mr. Bermeo Sicha's prior order of release, although it stated no basis for the revocation. A signature—apparently Mr. Bermeo Sicha's—appears below two checked boxes: The first acknowledges receipt of the notice, and the second requests an immigration judge review the custody determination. The bottom of the page provides an area to fill in interpreter information. Mr. Bermeo Sicha's name and native language are filled in, so the first sentence reads, "The contents of this notice were read

---

[2] Neither party could confirm precisely when Mr. Bermeo Sicha was moved or when Border Patrol transferred custody to CBP.

[3] At the hearing, Respondents introduced copies of the warrant and the Notice of Custody Determination. On both documents, Respondents redacted the signature of the agent (or agents) who signed them. No printed name appears on either document.

to Edgar Vicente Bermeo Sicha in the Spanish language." However, the lines for "Name and Signature of Officer," "Name or Number of Interpreter (if applicable)," and 'Title" all remain blank, suggesting no interpreter actually read the notice to Mr. Bermeo Sicha in Spanish. Indeed, counsel for Mr. Bermeo Sicha claims that he has not been given access to interpretation services and that the government has never informed him of the facts CBP relied on to revoke his order of release.[4]

While in custody in Maine, Mr. Bermeo Sicha was unable to access a lawyer until he had spent seventeen days in custody, at which point he was allowed a single phone call with legal counsel. At one point, he was allowed to use the phone to contact the Ecuadorian consulate, but no one else.

On August 15, 2025, Mr. Bermeo Sicha filed this Petition through counsel; the Court received the Petition at 1:02 a.m. and docketed it at 9:13 a.m. that day. ECF No. 1. He sought release from custody, a declaratory judgment that his detention violates the Fifth Amendment, and a temporary injunction barring Respondents from transferring him outside the District of Maine while this case remains pending. *Id.* at 6–7. Later that day, at 4:04 p.m., in accordance with 28 U.S.C. § 2243, I ordered Respondents to show cause within three days why the writ of habeas corpus should not be granted. ECF No. 4. As it turns out, the government already had transferred Mr. Bermeo Sicha out of Maine on a flight to Texas that morning at 9:23 a.m., just a few minutes after the Petition was docketed.[5] ECF No. 6 at 3; ECF No. 6-3 (passenger manifest for flight indicating the transfer time as 3:22 p.m. on August 15, 2025).

---

[4] Counsel confirmed at the hearing that Mr. Bermeo Sicha is not pressing any argument as to the legitimacy of the warrant.

[5] As represented by counsel for Respondents, the timing of this flight in relation to the Petition was coincidental.

Before filing his Petition in this Court, on August 14, 2025, Mr. Bermeo Sicha, through counsel, moved for a bond hearing in the Chelmsford Immigration Court in Massachusetts.[6] On August 18, 2025—after the government had already moved Mr. Bermeo Sicha to Texas—the Chelmsford Immigration Court rejected Mr. Bermeo Sicha's motion "due to improper filing," ECF No. 13 at 3 n.3, and asked his counsel to refile. Mr. Bermeo Sicha claims there was no filing error and that the Chelmsford Immigration Court should not have rejected the motion. In any event, when Mr. Bermeo Sicha refiled the motion for a bond hearing the next day on August 19, 2025, the Chelmsford Immigration Court rejected the motion because Mr. Bermeo Sicha was no longer present in Maine.

The parties initially disputed which government agency had custody of Mr. Bermeo Sicha. Respondents claimed in their response to my Order to Show Cause that Mr. Bermeo Sicha was in the custody of ICE Enforcement and Removal Operations ("ERO") in Texas. Mr. Bermeo Sicha replied (on August 23, 2025) that he actually was in CBP custody at the central processing facility at 3700 West Ursula Drive in McAllen, Texas. He also claimed a CBP officer told him he would not be transferred to ICE custody until after his August 27, 2025, immigration court hearing.[7] Respondents acknowledged in their sur-reply that their initial representation as to Mr. Bermeo Sicha's whereabouts was erroneous, and that in fact the government transferred Mr. Bermeo Sicha to ICE custody at the Port Isabel Service Processing Center in Los Fresnos, Texas, on August 24, 2025,

---

[6] There is no immigration court in Maine, so the Chelmsford Immigration Court services bond claims from detainees in Maine. On August 14, 2025, Mr. Bermeo Sicha remained in CBP custody at Van Buren Station, in Maine.

[7] At this Court's hearing on August 28, 2025, counsel for Mr. Bermeo Sicha informed the Court that the August 27, 2025, immigration court hearing had been cancelled by the immigration court at the last minute.

where he remains as of the date of Respondents' filing. Though in custody, Mr. Bermeo Sicha is not presently subject to a final order of removal.[8]

On August 28, 2025, I held a virtual hearing on the petition. ECF No. 16.

## DISCUSSION

### I.  The Statutory and Regulatory Scheme

The Immigration and Nationality Act ("INA") gives the government the option to detain some noncitizens pending a decision on whether to remove them from the country. *See* 8 U.S.C. § 1226. This discretionary detention statute permits—but does not require—the government to arrest and detain a noncitizen "[o]n a warrant issued by the Attorney General" or their designees.[9] 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(b)(1) (2025); *see Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). If the government does arrest a noncitizen on such a warrant, the Attorney General or their designees may then continue to detain them or release them on bond or conditional parole. 8 U.S.C. § 1226(a)(2); 8 C.F.R. § 236.1(c)(8).

Usually, it falls to the "arresting immigration officer [to] make[] an initial custody determination." *Gomes v. Hyde*, No. 25-CV-11571, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025). DHS regulations supply the standard the officer must apply. The noncitizen must demonstrate that their "release would not pose a danger to property or persons, and that [they are] likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). If the

---

[8] Mr. Bermeo Sicha claimed he initially had limited access to counsel while detained in Texas in CBP custody. However, his counsel represented at the hearing that those issues had been resolved and they were no longer pressing the issue of insufficient access to counsel.

[9] Respondents agree Mr. Bermeo Sicha is detained pursuant to § 1226(a). *See* ECF No. 6 at 1. There are a few narrow exceptions to § 1226's discretionary detention regime for noncitizens involved in certain enumerated criminal activities, *see* 8 U.S.C. § 1226(c), but Respondents have not asserted and nothing in the record suggests those provisions are applicable here.

noncitizen meets that burden, the officer may release them on "bond of at least $1,500" or on "conditional parole."[10] 8 U.S.C. § 1226(a)(2); 8 C.F.R. § 236.1(c)(8).

If the officer decides to detain the noncitizen, the noncitizen may appeal that custody determination to an immigration judge ("IJ"). *Id.* § 236.1(d)(1); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 26 (1st Cir. 2021) ("If the officer opts for continued detention, the noncitizen can seek review of that decision at a bond hearing before an IJ."). In this circuit, at the custody hearing before an IJ, the burden of proof flips: The government must "prove by clear and convincing evidence that [the noncitizen] poses a danger to the community or . . . prove by a preponderance of the evidence that [the noncitizen] poses a flight risk." *Hernandez-Lara*, 10 F.4th at 41. If the government fails to meet that burden, bond or conditional parole must be granted. *Gomes*, 2025 WL 1869299, at *2. "[R]elease may be revoked at any time in the discretion" of various officials. 8 C.F.R. § 236.1(c)(9) (listing the "district director[s]" eligible to revoke release); 8 U.S.C. § 1226(b) ("The Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien."). The BIA has limited the discretion of those district directors to revoke release, however, and requires that "where a previous bond determination has been made by an immigration judge, no change should be made by a District Director absent a change of circumstance." *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981). DHS similarly "require[es] a showing of changed circumstances" even "where the previous release decision was made by a DHS

---

[10] "Conditional parole provides a mechanism of release on recognizance, without payment of a bond, at the discretion of the government." *Rosado v. Figueroa*, No. CV 25-02157, 2025 WL 2337099, at *7 (D. Ariz. Aug. 11, 2025), *R&R adopted sub nom. Rocha Rosado v. Figueroa*, 2025 WL 2349133 (Aug. 13, 2025). And courts across the country have recognized that the government usually uses "the phrase 'release on recognizance' as another name for 'conditional parole.'" *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007); *see also Mamo v. Att'y Gen. of U.S.*, 443 F. App'x 692, 694 n.3 (3d Cir. 2011) (per curiam).

officer." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017), *aff'd sub nom.*

*Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018); *see also dos Santos v. Noem*,

No. 25-CV-12052, 2025 WL 2370988, at *9 (D. Mass. Aug. 14, 2025) (applying limitation

on an official's discretionary revocation authority).

## II.    Jurisdiction and Exhaustion

The INA channels immigration claims through the administrative process and

limits judicial review while that process is ongoing. The relevant provision provides as

follows:

> Judicial review of all questions of law and fact, including interpretation and
> application of constitutional and statutory provisions, arising from any
> action taken or proceeding brought to remove an alien from the United
> States . . . shall be available only in judicial review of a final order under this
> section.

8 U.S.C. § 1252(b)(9). This "zipper" clause, *Reno v. Am.-Arab Anti-Discrimination*

*Comm.*, 525 U.S. 471, 483 (1999), squeezes claims relating to removal into the

administrative process, only to release them for judicial review once a final administrative

order is issued. Until that happens, the statute strips federal courts of jurisdiction.

8 U.S.C. § 1252(b)(9) ("[N]o court shall have jurisdiction, by habeas corpus . . . or by any

other provision of law (statutory or nonstatutory), to review such an order or such

questions of law or fact.").

However, this claims-channeling provision does not cover all claims by

immigration detainees. *Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of*

*Homeland Sec.*, 510 F.3d 1, 10 (1st Cir. 2007) ("With respect to section 1252(b)(9), these

words cannot be read to swallow all claims that might somehow touch upon, or be traced

to, the government's efforts to remove an alien."). A noncitizen can bring independent

claims "collateral to" the removal process—such as those that "cannot effectively be

handled through the available administrative process"—in federal court in the first instance. *Id.* at 11. As such, constitutional challenges to detention are outside § 1252(b)(9)'s scope. *Id.* at 19; *Hernandez-Lara*, 10 F.4th at 34 (hearing habeas claim concerning "the constitutional restraints" on the Attorney General's discretionary detention authority under § 1226(a)); *see Rodrigues De Oliveira v. Joyce*, No. 25-CV-00291, 2025 WL 1826118, at *3 (D. Me. July 2, 2025) (concluding the court had jurisdiction where the petitioner challenges on due process grounds "the legality of a regulation that has deprived her of a bond hearing before an immigration judge"). Here, Mr. Bermeo Sicha's constitutional claim mirrors those in *Hernandez-Lara* and *Rodrigues De Oliveira*, challenging the process under which he was detained without an opportunity to challenge that detention before an immigration judge. Accordingly, I find this Court has jurisdiction to hear Mr. Bermeo Sicha's due process claim.

The government also suggests that "common-law exhaustion" principles caution against proceeding to the merits. ECF No. 6 at 10. In *Brito v. Garland*, the First Circuit declined to address a class of immigration petitioners' argument that due process requires an IJ to consider alternatives to detention (such as GPS monitoring) at a bond hearing, because the petitioners had not raised the argument in front of any IJs in the first place. 22 F.4th 240, 256 (1st Cir. 2021). As the court explained, "exhaustion allows an agency the first opportunity to apply its expertise and obviates the need for judicial review in cases in which the agency provides appropriate redress." *Id.* (quotation modified). Because an IJ is "better equipped than are the federal courts to determine what alternatives to detention an IJ has the authority to enforce," the court concluded the petitioners should have raised the argument in front of the IJs first. *Id.* Moreover, the court emphasized the fact that none of the petitioners remained in detention. *Id.*

Here, I see no similar reason to require administrative exhaustion for Mr. Bermeo Sicha's due process claims. The administrative agency has no particular expertise in resolving constitutional questions. Indeed, Mr. Bermeo Sicha could not exhaust his due process claims through the administrative process because "neither the IJ nor the BIA has jurisdiction to decide constitutional issues." *Ozturk v. Hyde*, 136 F.4th 382, 400 (2d Cir. 2025) (quotation modified).

Mr. Bermeo Sicha in fact attempted to obtain some relief through the administrative process by requesting on his Notice of Custody Determination form—dated the day after his arrest and detention—that an immigration judge review his custody status. Now, one month later, the government still has not provided any hearing,[11] yet Mr. Bermeo Sicha remains detained. Accordingly, I decline to require Mr. Bermeo Sicha to exhaust his due process claim before addressing it here in this Court.

## III.    The Merits

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation modified). The particular procedures satisfying that fundamental baseline depend on the "particular situation;" due process is "flexible." *Id.* at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). In *Mathews*, the Court explained that three factors guide the "specific dictates of due process" in any given situation: (1) "[T]he private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any,

---

[11] Indeed, the Massachusetts Immigration Court has twice so far rejected bond hearing requests there, and at the hearing Respondents indicated Mr. Bermeo Sicha's July 29, 2025, request was no longer pending. Demanding exhaustion by way of a whack-a-mole game would ill serve any purpose, let alone the Due Process Clause of the Fifth Amendment.

of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335. As I explain below, these factors all weigh in favor of affording Mr. Bermeo Sicha notice and an opportunity to be heard. As my colleague Judge Walker recently articulated, it is "difficult if not impossible to materially distinguish [this petitioner] from the habeas petitioner [in] *Hernandez-Lara*," *Rodrigues De Oliveira*, 2025 WL 1826118, at *6, so the *Mathews* factors "balance out in this case the same way they balanced out" there, *id.* at *4.

### A. The Private Interest

Mr. Bermeo Sicha's private interest is strong. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Due Process Clause protects." *Hernandez-Lara*, 10 F.4th at 28 (quotation modified) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). The Fifth Amendment's declaration that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law," U.S. Const. amend. V, implies a simple background principle: "In our society liberty is the norm . . . ." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)).

Mr. Bermeo Sicha lived in the United States on conditional parole prior to his arrest. He worked as a carpenter. Although he was subject to certain conditions as part of his release, he otherwise enjoyed the same freedom and bore the same responsibilities as all of us living in the United States. By contrast, since the government suddenly arrested him, Mr. Bermeo Sicha has been detained in at least four different facilities over the course of a month. At one of those facilities, he slept "on a cot on the floor in a small cell with six other men." ECF No. 1 at 3. "There is no question" that such detention constitutes

"a substantial deprivation of liberty." *Hernandez-Lara*, 10 F.4th at 28; *Valdez v. Joyce*, No. 25 CIV. 4627, 2025 WL 1707737, at *3 (S.D.N.Y. June 18, 2025) ("Petitioner was 'handcuffed, detained, placed into a holding cell and ultimately transferred halfway across the country to Texas.' His liberty interest is clearly established." (internal citation omitted)).

And while detention during deportation proceedings undoubtedly is "a constitutionally valid aspect of the deportation process," this does not diminish Mr. Bermeo Sicha's liberty interest. *Demore v. Kim*, 538 U.S. 510, 523 (2003). That noncitizens *may* be detained prior to deportation has no bearing on whether the Constitution imposes procedural contours around such detention. Indeed, detention is a constitutionally valid aspect of the entire criminal legal system; still, the Fifth Amendment applies to pre-trial detainees. *Hernandez-Lara*, 10 F.4th at 28 ("[T]he same could be said for criminal proceedings. And in either case the fact that *some* detention is permissible does not change the fact that a detainee suffers significant liberty deprivations." (emphasis added)); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (disagreeing with the government's argument that a petitioner's liberty interest is diminished "because of his conviction and his noncitizen status").

## B. The Risk of Erroneous Deprivation

When DHS released Mr. Bermeo Sicha on conditional parole in the first instance, it necessarily determined that he was "not a danger to the community or a flight risk." *Salazar v. Kaiser*, No. 25-CV-01017, 2025 WL 2456232, at *13 (E.D. Cal. Aug. 26, 2025); *see* 8 C.F.R. § 236.1(c)(8) (providing the standard immigration officers must apply). Therefore, to re-detain him, the government had to show a change of circumstances. *Saravia*, 280 F. Supp. 3d at 1197; *dos Santos*, 2025 WL 2370988, at *9. Respondents do

not dispute that Mr. Bermeo Sicha has no criminal record and has never been arrested prior to his detention, including during the sixteen months between his initial release on recognizance and when Border Patrol detained him.

Although Respondents represented in a footnote in their response that Mr. Bermeo Sicha was detained because he worked without authorization and changed his state of residency without notifying immigration authorities, ECF No. 6 at 3 n.2, counsel for Mr. Bermeo Sicha represented his understanding that Border Patrol agents arrested Mr. Bermeo Sicha only because the driver of the car he was in did not have "papers." The fact that there is a significant factual discrepancy as to the basis for Mr. Bermeo Sicha's detention highlights the risk of erroneous deprivation without a hearing before an IJ. *See Rodrigues De Oliveira*, 2025 WL 1826118, at *1 (finding petitioner who apparently "had acquired a criminal history in the United States" entitled to bond hearing). That is, without a hearing on the basis for detention, there remains a risk that Mr. Bermeo Sicha is detained even though the circumstances do not warrant it.

### C. The Government's Interest

The government indeed has a legitimate interest in the "prompt execution of removal orders . . . which detention may facilitate." *Hernandez-Lara*, 10 F.4th at 32. However, the government has little legitimate interest in suddenly detaining without a hearing noncitizens whom DHS already determined to be neither a flight risk nor a danger to the community. *Id.* at 32–33. And, as the First Circuit has held, the only way to constitutionally determine whether a particular noncitizen presents a flight risk involves a hearing before an IJ with properly allocated burdens of proof. *See id.* Accordingly, the government interest in avoiding any pre-detention process in this instance is low.

Moreover, the public interest weighs against detention without a hearing. *Id*. at 33 (noting that "unnecessary detention" of noncitizens "imposes substantial societal costs").

### D. The Remedy

As in *Hernandez-Lara* and *Rodrigues De Oliveira*, the *Mathews* factors weigh in favor of affording Mr. Bermeo Sicha notice and an opportunity to be heard. Therefore, Mr. Bermeo Sicha is entitled to a bond hearing under these circumstances. *See Rodrigues De Oliveira*, 2025 WL 1826118, at *7; *dos Santos*, 2025 WL 2370988, at *9. The absence of any process for Mr. Bermeo Sicha mirrors the procedural deficiencies the court identified in *dos Santos*. Accordingly, "[u]nless and until" the government carries its burden "to show that a change in circumstances supported its decision to revoke" the previous custody determination at a hearing before an Immigration Judge, Mr. Bermeo Sicha must be released from custody subject to the 2024 bond order. *dos Santos*, 2025 WL 2370988, at *9.

This determination is consistent with the conclusion of other courts that noncitizens like Mr. Bermeo Sicha initially released on bond or conditional parole under § 1226(a) are entitled to a hearing before their bond or parole is revoked. *See, e.g.*, *Ortega*, 415 F. Supp. 3d at 970; *Valdez*, 2025 WL 1707737, at *4 ("[O]ngoing detention of Petitioner with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond, violates his due process rights."); *Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050, 1055 (N.D. Cal. 2021) ("[I]f Petitioner is detained, he will already have suffered the injury he is now seeking to avoid."); *Rosado v. Figueroa*, No. CV 25-02157, 2025 WL 2337099, at *19 (D. Ariz. Aug. 11, 2025) (ordering petitioner released, returned to Massachusetts, and barring her detention without a pre-deprivation bond hearing before the Massachusetts immigration court), *R&R adopted sub nom.*

*Rocha Rosado v. Figueroa*, 2025 WL 2349133 (Aug. 13, 2025); *Salazar*, 2025 WL 2456232, at *13 (ordering petitioner's release and barring their detention without a hearing); *Oliveros v. Kaiser*, No. 25-CV-07117, 2025 WL 2430495, at *4 (N.D. Cal. Aug. 22, 2025) (same); *cf. Pham v. Becerra*, 717 F. Supp. 3d 877, 888 (N.D. Cal. 2024) (similar, requiring a bond hearing within five days if petitioner is re-detained).

Because "liberty is the norm," *Hamdi*, 542 U.S. at 529, I find Mr. Bermeo Sicha must be released pending the outcome of his bond hearing. Two factors in particular guide my conclusion. First, Mr. Bermeo Sicha has made at least three attempts to secure a hearing—he requested one on his Notice of Custody form, and his counsel filed two bond motions in the Chelmsford Immigration Court—all to no avail. Second, nothing in the record suggests Mr. Bermeo Sicha has any criminal history, placing him in a "more favorable light" than the petitioner in *Rodrigues De Oliveira*, 2025 WL 1826118, at *6, and the only alleged rationale for his detention, indicated in a footnote of a brief, is subject to a factual dispute properly decided by an IJ. *See also Ceesay v. Kurzdorfer*, No. 25-CV-267, 2025 WL 1284720, at *20 (W.D.N.Y. May 2, 2025) ("[H]ow can we pride ourselves on being a nation of laws if we are not willing to extend that most fundamental right to all—if we are not at least willing to ask, *before* we lock you up, do you have anything to say?" (emphasis added)).

## CONCLUSION

For these reasons, I **GRANT** Mr. Bermeo Sicha's petition for a writ of habeas corpus. ECF No. 1. Respondents are **ORDERED** to release Mr. Bermeo Sicha from custody within 48 hours of the entry of this Order, subject to the March 21, 2024, order of release on recognizance. ECF No. 1-1. Respondents are further **ORDERED** to file a

status report on or before September 3, 2025, confirming that Mr. Bermeo Sicha has been released from custody.

**SO ORDERED.**

Dated this 29th day of August, 2025.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**